IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HEIDI H.,[1]<br><br>                    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION<br><br><br>Case No. 2:24-cv-00776-CMR<br><br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 7). 28 U.S.C. § 636(c). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and supplemental security income (SSI) under Title XVI of the Act. After careful review of the entire record (Certified Administrative Record (AR), ECF 9), the parties' briefs (ECF 11, 18, 20), and oral argument (ECF 25), the court concludes that the Commissioner's decision is supported by substantial evidence and legally sound. For the reasons discussed below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 11) and AFFIRMS the decision of the Commissioner.

## I.     BACKGROUND

On July 17, 2020, Plaintiff filed an application for DIB and SSI, alleging disability due to degenerative disc disease, attention-deficit/hyperactivity disorder (ADHD), depression, sciatica, hand/wrist/arm problems, hearing loss, gastroesophageal reflux disease (GERD), anxiety disorder,

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the court refers to Plaintiff by first name and last initial only.

bipolar disorder, and post-traumatic stress disorder (PTSD) (AR 70). In assessing Plaintiff's application, the ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (AR 11–27). *See* 20 C.F.R. § 404.1520(a)(4).[2] On September 28, 2023, the ALJ issued its decision, determining at step two that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, recurrent pedal edema with neuropathy, bipolar disorder, depressive disorder, ADHD, anxiety disorder, and PTSD (AR 12).[3] The ALJ found at step three that Plaintiff's impairments did not meet or medically equal a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings) (AR 14).

Relevant to this appeal is the evidence that the ALJ considered with regard to Plaintiff's mental impairments. The ALJ noted that during Plaintiff's "first consultative psychological examination," Plaintiff "was able to perform serial threes backwards from 30 with no errors and with adequate recitation speed, and she was able to recall the date and the current U.S. President and past Presidents" (AR 14–15). At a second examination, Plaintiff's "broad cognition as estimated by a brief screening instrument (MOCA 20/30) suggested areas of reduction, but her working memory was intact in that she did not have difficulty recalling number series or basic sentences with accuracy, and she accurately subtracted 7's backwards from 100" (*id.*). The ALJ further noted that Plaintiff's "verbal fluency was limited to 9 words beginning with the letter 'F' in a 60-second period, and she was only able to recall one word out of five she had accurately rehearsed several moments earlier" (*id.*).

---

[2] Unless otherwise noted, all references to the Code of Federal Regulations (C.F.R.) are to part 404 of the 2023 edition, which governs claims for DIB and was in effect at the time of the ALJ's decision. Parallel citations to part 416, which governs claims for SSI, will not be included.

[3] The ALJ also found that Plaintiff had non-severe impairments of GERD and substance abuse disorder (AR 13–14). Plaintiff does not challenge any of these findings on appeal.

Furthermore, the ALJ stated that Plaintiff "was able to interact appropriately during the disability hearing, and consultative examiners did not describe problems interacting with her during the examinations, except that it was noted by one examiner that [Plaintiff] at times demonstrated a somewhat odd, fixed gaze along with awkward social interaction" (*id.*). Moreover, while Plaintiff indicated she did not like being around others, the ALJ found that "her activities of daily living include shopping in stores, which indicates that she is able to interact with others at least to a limited degree" and that in her "initial functional report" Plaintiff stated that she "sometimes performed activities outside of the house alone" (*id.*). The ALJ noted the "mental status examinations by treatment providers show an anxious and depressed mood" finding that these symptoms "would have an impact on [Plaintiff's] ability to interact with others" (*id.*). However, the ALJ found Plaintiff's statements about the "intensity, persistence, and limiting effects of her symptoms" were inconsistent with the results of the mental status examinations which "have generally been within normal limits" (AR 18). The ALJ further noted various treatment records that show that medications helped Plaintiff manage her bipolar disorder, depression, and anxiety (AR 20; *see* AR 415, 418, 420, 486, 531–33, 876–77).

Three of the medical opinions considered by the ALJ, which Plaintiff now challenges on appeal, were those of Dr. Charles Raps (Dr. Raps), a state agency psychological consultant, Dr. Andrew Nichols (Dr. Nichols), another consultative psychological examiner, and Tate Jensen, PA-C (PA Jensen), Plaintiff's primary care provider (AR 21–25).

Dr. Raps found that Plaintiff "is capable of repetitive tasks learned in up to 3 months without fast-paced production quotas and with reduced social exposure in the workplace" (AR 23). There were two psychological consultative examinations of Plaintiff, and the results of those exams show that Plaintiff appeared "much more limited on October 17, 2022, than she was on

November 18, 2021" (*id.*). The ALJ noted that, based on the reports alone, it would appear Plaintiff

was more limited at the second examination, but the ALJ did not find this fact determinative stating

that "a review of the entire record shows that [Plaintiff's] mental health symptoms have waxed

and waned to some degree over the entire period of review dating back to the alleged onset date"

(*id.*). In viewing the record as a whole, the ALJ stated there "was not a significant difference in

[Plaintiff's] level of functioning on a longitudinal basis due to mental impairments as of the date

she was last insured" (*id.*). Thus, because the findings of Dr. Raps were "not consistent with the

treatment records," the ALJ determined they were "generally not persuasive, except to the extent

they generally support limitations with respect to interactions with others" (*id.*).

Dr. Nichols stated that Plaintiff is "likely to require compensatory aids such as

lists/reminders when provided novel instructions or directions for the first time" (AR 24). He

further opined that Plaintiff's "depressive symptoms continue to have a significant impact on her

ability to engage with others including long-term friends, but she does not appear to be at a

significant risk for emotional dysregulation in response to workplace stressors or negative

interpersonal interactions" (*id.*). But the ALJ did not consider this opinion to be supported because

these limitations were "not expressed in vocational terms and are difficult to interpret" (*id.*). There

was however "some support in the record" for Dr. Nichols' "broad statements, including mental

status examinations that show an anxious and depressed mood" and the "limitations regarding

understanding, remembering, or applying information" (*id.*). The ALJ also found that "the

limitations regarding instructions or directions are consistent with some difficulty noted during the

consultative examinations with recall and areas of reduction in broad cognition as estimated by a

brief screening instrument (MOCA 20/30)" (*id.*). The limitations discussed by Dr. Nichols were

also "generally consistent with [Plaintiff's] anxious and depressed mood as described in some of

the treatment records," which the ALJ had summarized earlier in its ruling (*id.*). Accordingly, the ALJ found Dr. Nichols' opinions "only somewhat persuasive" (*id.*).

Concerning PA Jensen, Plaintiff's primary care provider, the ALJ noted that there was "limited information in the treatment records regarding any mental status examinations that may have been conducted" (AR 20). The ALJ then summarized some of the treatment notes that PA Jensen took during his exams of Plaintiff (*id.*). For example, the ALJ stated that in October 2019, PA Jensen reported that "with anti-anxiety medication [Plaintiff] was able to function in daily activities and interact with family and friends" (*id.*). There were also treatment notes that the ALJ summarized from September 2020, October 2021, September 2022, and June 2023, all of which indicated various medications had been helpful at treating Plaintiff's bipolar disorder, anxiety, and depression (*id.*). In September 2020, PA Jensen "completed a form entitled Mental Capacity Assessment," where he indicated that "almost all marked limitations" in categories related to Plaintiff's mental capabilities, including that she had a limited ability at "adapting or managing oneself," but PA Jensen also marked that Plaintiff "can handle benefits in her own interest" (AR 23). The ALJ noted this "internal inconsistency" and remarked that "there is no explanation on the form itself for the limitations provided" (*id.*). The ALJ determined that the limitations found by PA Jensen were "not supported by treatment notes showing that symptoms are generally controlled with medications" and they were also "not consistent with treatment records from Valley Behavioral Health with findings of consultative examiners" (*id.*). Thus, the ALJ found PA Jensen's opinions in the Mental Capacity Assessment "not persuasive" (*id.*).

The ALJ next found that Plaintiff had the residual functional capacity (RFC) to perform light work with additional limitations, including:

> [S]he can be on her feet 4 hours in an 8 hour workday, can
> occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl,

> and never climb ladders, ropes, or scaffolds; can understand, remember, and carry out simple instructions; can have occasional changes in a routine work setting, and can have occasional contact with the public, coworkers, and/or supervisors.

(AR 16). *See* 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."). Given this RFC, the ALJ determined, at step four, that Plaintiff was not able to perform her past relevant work as a nurse's aide (AR 25). At the administrative hearing, the ALJ heard testimony from a vocational expert (VE), and the ALJ posited the following hypothetical directly to the VE:

> I would like you to consider a hypothetical individual of the claimant's age, education level, and vocational background who is capable of light exertion, saying that she could only be off her feet a total of four hours in an eight-hour shift; the individual could occasionally perform all postural activities safe for climbing; individual could occasionally climb ramps or stairs, but never ropes, ladders, or scaffolds. Further, the individual could understand, remember and carry out simple instructions; that is, instructions typical of tasks that can normally be learned in 30 days or less; can have no more than occasional changes in a routine work setting, and can have occasional contact with the public, co-workers and/or supervisors.

(AR 64–65). The ALJ then asked whether there were jobs "that such a hypothetical individual could perform" (*id.* at 65). The VE responded in the affirmative and indicated that such an individual could perform at least three specific jobs listed in the Dictionary of Occupational Titles (DOT) (*id.*). Consistent with the VE's testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including marker/labeler, mail sorter, and routing clerk (AR 26). The ALJ thus concluded that Plaintiff was not disabled under the Act (AR 27). *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

On August 27, 2024, the Appeals Council denied Plaintiff's request for review (AR 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). This appeal followed.

## II.    STANDARD OF REVIEW

The scope of the court's review of the Commissioner's final decision is specific and narrow. As stated by the United States Supreme Court, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id.* at 103. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this deferential standard, this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The court's inquiry, "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 587 U.S. at 108.

## III.    DISCUSSION

Plaintiff raises two issues in her appeal: (A) whether the ALJ "failed to support with substantial evidence the specific mental limitations used in the VE hypothetical, causing the overall decision to lack the support of substantial evidence," and (B) whether the ALJ "erred in his evaluation of the mental health opinion evidence" (ECF 11 at 1). The court addresses each argument in turn.

### A.  The ALJ's Hypothetical to the VE was Sufficient.

A "hypothetical presented to the vocational expert" is sufficient where it "contain[s] all of the limitations found to exist by the ALJ." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *see also Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (finding that where "the ALJ's findings

regarding the limited nature and effect of plaintiff's impairments" were "adequately reflected in the ALJ's hypothetical inquiries to the vocational expert" that "the expert's testimony provided a proper basis for adverse determination of this case"). According to Plaintiff, the ALJ's hypothetical presented to the VE was insufficient because it asked the VE to consider a person who can carry out instructions that are "typical of tasks that can normally be learned in 30 days or less," which Plaintiff believes is inconsistent with the RFC limitations found by the ALJ that restrict her to "simple work" (ECF 11 at 11). During oral argument, Plaintiff further expounded on this argument, clarifying that she believes the ALJ erred by focusing the hypothetical inquiry on the Specific Vocational Preparation (SVP) scale rather than on the General Educational Development (GED) requirements in the DOT listings (ECF 25). For the following reasons, the court rejects Plaintiff's arguments on these points.

Beginning with the SVP scale, the DOT defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C, Sec. II (4th ed. 1991), 1991 WL 688702. There are nine different SVP levels, with jobs at level one requiring "[s]hort demonstration only" to learn the requisite skills and level two requiring "[a]nything beyond short demonstration up to and including 1 month." *Id.* The ALJ's hypothetical to the VE thus corresponds with an SVP level 2. And, based on the relevant Social Security Rulings (SSRs), an SVP level 1 or 2 corresponds to "unskilled work." SSR 00–4p, 2000 WL 1898704, at *3. The Code of Federal Regulations, in turn, defines "[u]nskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

8

At the outset, the court does not find that it was improper for the ALJ to reference a specific SVP level in the hypothetical posed to the VE. Indeed, in *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015), the Tenth Circuit similarly found no error with the ALJ's decision to account for the claimant's "concentration, persistence and pace limitations" by "restricting his RFC to unskilled (SVP one or two) work" rather than accounting for those specific limitations in the RFC. *Id.* at 1203. The court recognized that limiting work to "unskilled" to address a claimant's mental limitations may not be adequate in all cases. *Id.* at 1204 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). But, the court took note that "[u]nskilled work" typically has only four requirements: "(1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'" *Id.* (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)). Thus, in applying the relevant definitions, the facts of the case, and after consulting the SSRs, the court found "that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace." *Id.* at 1204.

In applying the reasoning from *Vigil*, along with the relevant rules and regulations, this court determines that the ALJ's reference to SVP level 2 work in the hypothetical to the VE is consistent with Plaintiff's RFC limitations (AR 16). Moreover, the court notes that the ALJ's hypothetical went beyond asking the VE to consider someone limited to an SVP level 2, the ALJ also asked the VE to consider an individual who could "understand, remember and carry out simple instructions" and that "can have no more than occasional changes in a routine work setting, and can have occasional contact with the public, co-workers and/or supervisors" (AR 64–65). The VE

was therefore presented with the entirety of Plaintiff's RFC limitations, and the court does not find that by asking the VE to also consider jobs that include tasks that could be learned "in 30 days or less," that this impermissibly limited or broadened the scope of the ALJ's hypothetical.

Beyond her argument about the SVP level, Plaintiff further contends that the ALJ's hypothetical should have focused on the GED requirements of the jobs. "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job." *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013). The GED scale is comprised of three divisions: Reasoning Development, Mathematical Development, and Language Development. DOT, App. C, Sec. III (4th ed. 1991), 1991 WL 688702. Relevant here is the Reasoning Development division, which is rated between 1 and 6. *Id.* Level 1 reasoning requires the ability "to carry out simple one- or two-step instructions," and Level 2 reasoning requires the capacity to "carry out detailed but uninvolved written or oral instructions." *Id.* Meanwhile, Level 3 reasoning requires the ability "to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* Notably, there does not appear to be any case law from the Tenth Circuit that has considered "the interrelationship between SVP, GED, and reasoning levels one, two, and three." *George Paul B. v. Kijakazi*, No. CV 21-2075-JWL, 2022 WL 1684670, at *7 (D. Kan. May 26, 2022).

According to Plaintiff, given her disabilities, she believes "a restriction to work requiring a GED Reasoning Level of 1 would be appropriate," but the jobs identified by the ALJ require a GED Reasoning Level of 2 or 3 (ECF 11 at 16). Plaintiff however has presented no case law to support her position that someone with her limitations can only perform work that requires a GED Reasoning Level of 1.

Furthermore, contrary to Plaintiff's assertions, courts have found that Level 2 reasoning is consistent with simple, routine, and repetitive tasks of unskilled work. *See e.g.*, *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (stating that an RFC limitation of "simple and routine work tasks" is "consistent with the demands of level-two reasoning"); *Ashley I. S. C. v. Kijakazi*, No. 22-CV-00201-SH, 2023 WL 5628598, at *7 (N.D. Okla. Aug. 31, 2023) ("The undersigned has already found that there is no apparent conflict between an RFC limiting a claimant to 'simple, routine tasks' and reasoning level 2."); *George Paul B.*, 2022 WL 1684670, at *7 (finding no conflict between GED level 2 reasoning and simple instructions).[4] Here, the ALJ found that Plaintiff could perform "simple instructions" and "occasional changes in a routine work setting" (AR 16). Based on relevant case law, the court finds that Plaintiff's RFC limitations did not limit her to jobs that require GED Level 1 reasoning, and the ALJ thus did not need to include limitations in the hypothetical to the VE that correspond with Level 1 reasoning.[5]

Considering the record before it, the court finds that the hypothetical that the ALJ presented to the VE was a direct reflection of Plaintiff's RFC limitations. While the hypothetical did not directly reference a certain GED level, the court finds no error in the mental limitations that the ALJ described in the VE hypothetical; thus, the court rejects Plaintiff's assertions that the overall

---

[4] Various circuits have reached similar conclusions regarding Level 2 reasoning. *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019) (finding no conflict between the claimant's limitations to "simple, routine repetitive tasks of unskilled work" and the DOT's definition of Level 2 reasoning); *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (stating there was "no apparent conflict" between the ALJ's RFC determination that the claimant was "limited to simple, repetitive tasks" and the VE's testimony that she could perform work that required Level 2 reasoning); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011) (stating that claimant allegedly "suffers from memory and concentration problems," but she still "has the ability to reason" and her limitation to "simple routine work" was consistent with jobs that required Level 2 reasoning).

[5] While not directly raised in the briefing, the court notes that the ALJ's findings state that Plaintiff's prior employment was as a nurse's aide, and the DOT indicates that this job requires a GED Reasoning Level of 3. DICOT 355.674-014 (Nurse Assistant), 1991 WL 672944. As stated above, GED "describes the general educational background that makes an individual suitable for the job," *see Anderson*, 514 F. App'x at 764, and based on Plaintiff's arguments and the record before it, the court fails to see how her "general educational background" would have changed such that she can no longer perform jobs that require a GED Reasoning Level of 3.

decision was not supported by substantial evidence. To the extent Plaintiff asserts that the RFC limitations themselves were not supported by substantial evidence, the court addresses those arguments below.

For those reasons, the court finds that the hypothetical presented to the VE was sufficient because it contained all the limitations found to exist by the ALJ.

**B.  The ALJ Reasonably Weighed the Medical Opinions in Assessing Plaintiff's RFC.**

The second issue Plaintiff raises is whether the ALJ erred in the evaluation of "the mental health opinion evidence" (ECF 11 at 17). When considering medical opinions and prior administrative medical findings (PAMF), ALJs consider the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency, and these are the only two factors that the ALJ must explain how they were considered. *Id.* § 404.1520c(b)(2).

"Supportability refers to relevant objective medical evidence supporting the explanations presented by a medical source." *Amy Lee M. v. Kijakazi*, No. 1:21-cv-044 DBP, 2022 WL 3597447, at *3 (D. Utah Aug. 23, 2022). "Consistency looks to view and compare the evidence from other medical sources and nonmedical sources." *Id.* The ALJ has met their articulation requirements with regard to these findings if the reviewing court is able "to trace the path of an adjudicator's reasoning." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844, 5858 (Jan. 18, 2017); *see also Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022). Furthermore, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7.

Plaintiff contends the ALJ erred in evaluating the opinions of Dr. Raps, Dr. Nichols, and PA Jensen (*id.*; ECF 9-2). The ALJ erred, according to Plaintiff, by failing to explain why the opinions of these three medical professionals were not adopted, and that the ALJ did not adequately explain how supportability and consistency were considered. For the following reasons, the court disagrees.

### i.  Dr. Raps

As courts have noted, the governing regulations do not "'prescribe the depth at which the ALJ must discuss' the factors of supportability and consistency." *J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023) (quoting *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022)). At a minimum, the ALJ needs to provide an explanation that enables this court to follow their reasoning and that "communicates how [they] considered the factors of consistency and supportability for each medical source's opinions." *Id.* (quoting *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022)); *see also Nielsen*, 2022 WL 15570650, at *5.

The court finds that the ALJ appropriately explained how he weighed consistency and supportability with regard to Dr. Raps' opinion. A more fulsome description of the ALJ's discussion on this point is included in the background section of this ruling. Before discussing the specifics of Dr. Raps' opinion, the ALJ described, at some length, Plaintiff's prior medical records and Plaintiff's own reported activities, as well as the ALJ's observations of Plaintiff during the disability hearing. According to the ALJ, these treatment records demonstrated that Plaintiff had the ability to "understand, remember, and carry out simple instructions," and they support a limitation to "occasional contact with the public, coworkers, and/or supervisors" (AR 16–22). The ALJ noted that various mental status examinations over the years showed that Plaintiff had normal

attention and memory, and the ALJ supported these finding with appropriate record cites (AR 20; *see* AR 504-05, 527, 553-54, 567, 704, 717, 747-48, 773-75, 790-91, 805-06, 820-22, 846-48, 862-64, 889-92).

While the ALJ did not use the word "supportability" in assessing Dr. Raps' opinion, the Commissioner argues that "a reasonable reading of the decision demonstrates that the ALJ considered the PAMF and substantively considered both what supported the opinion, and whether it was consistent with other evidence" (ECF 18 at 11). The court agrees. In its review, the court is not limited to just the discussion of Dr. Raps' opinion; the court considered the ALJ's decision "as a whole," to discern whether the appropriate factors were considered and appropriately weighed. *See Endriss v. Astrue*, 506 F. App'x 772, 776 (10th Cir. 2012). And when the court considered the ALJ's discussion of Plaintiff's medical history, treatment records, and observations in conjunction with the discussion of Dr. Raps' opinion, the court was able to follow the path of the ALJ's reasoning and could discern how supportability and consistency were weighed. *Nielsen*, 2022 WL 15570650, at *5.

Overall, the ALJ's discussion demonstrated that objective medical evidence did not support Dr. Raps' opinion, and it was also not consistent with the evidence from other medical and nonmedical sources. This included evidence that Plaintiff was doing well on her antidepressant medication and that she had benefited from a mood stabilizer that she was taking for her bipolar disorder (AR 20; *see* AR 415, 418, 486).   The ALJ also determined that a review of the entire record showed that Plaintiff's symptoms "waxed and waned to some degree" over time; therefore, the ALJ did not find it significant that Plaintiff appeared "much more limited" at the second psychological consultative examination (AR 23). In considering the facts and analysis provided

by the ALJ, the court finds that the ALJ appropriately explained how he weighed the relevant factors with regard to Dr. Raps' opinion.

Plaintiff further argues that even though the ALJ found Dr. Raps not persuasive, "it appears" that the ALJ was actually persuaded by Dr. Raps' PAMF, as the ALJ adopted Dr. Raps' psychiatric review technique "findings for the entire relevant period" and "loosely mimick[ed] his opinion related to the time needed to learn jobs" (ECF 11 at 18). According to Plaintiff, the ALJ failed to explain "why portions of the PAMF were not adopted" (*id.*). Dr. Raps stated that Plaintiff could complete "2-4 step tasks" but that "retention declines after a brief delay" (AR 112). He also opined that Plaintiff "is capable of repetitive tasks learned in up to 3 months without fast paced production quotas" (*id.*). In comparing this opinion to the RFC limitations found by the ALJ, the court disagrees with Plaintiff that the RFC limitations are a reflection of Dr. Raps' opinion, as his opinion places much stricter limitations on Plaintiff's mental capabilities. One example of this is that Dr. Raps concluded that Plaintiff was capable of tasks "learned in up to 3 months," but the ALJ asked the VE to consider a person who could learn tasks in 30 days or less (*compare* AR 112, *with* AR 64–65). The only portion of the RFC limitations that is consistent with Dr. Raps' opinion is the portion addressing limitations with respect to interactions with others. Dr. Raps opined that Plaintiff was limited to "reduced social exposure in the workplace" (AR 23), and the RFC limitations found by the ALJ included that Plaintiff "can have occasional contact with the public, coworkers, and/or supervisors" (AR 16). But the ALJ explained that this portion of Dr. Raps' opinion was consistent with Plaintiff's treatment records. Thus, the ALJ provided a sufficient explanation for why only a portion of Dr. Raps' opinion is consistent with the RFC limitations.

Consistent with the governing regulations, the ALJ weighed Dr. Raps' opinion and provided reasons for that weight and appropriately explained why Dr. Raps' opinion was not

adopted. The court also finds that substantial evidence supports the ALJ's evaluation of Dr. Raps' opinion.

###### ii. Dr. Nichols

Next, Plaintiff asserts that the ALJ did not appropriately explain its reasons for not adopting Dr. Nichols' opinion (ECF 11 at 19). Plaintiff contends that the ALJ's discussion of Dr. Nichols' opinion "only showed *that* the ALJ considered" supportability and consistency in the evaluation and "not *how* the ALJ considered the factors" (*id.*). Plaintiff's arguments regarding the ALJ's discussion of Dr. Nichols' opinion fail for the same reasons her arguments failed with regard to the discussion of Dr. Raps' opinion.

In addressing Dr. Nichols' opinion, the ALJ found it was only "somewhat persuasive" (AR 24). Dr. Nichols stated that Plaintiff is "likely to require compensatory aids such as lists/reminders when provided novel instructions or directions for the first time" (*id.*). Dr. Nichols further indicated that Plaintiff's "depressive symptoms" impact her ability to engage with others, but that Plaintiff "does not appear to be at significant risk for emotional dysregulation in response to workplace stressors or negative interpersonal interactions" (*id.*). The ALJ noted that the limitations discussed by Dr. Nichols were not supported because they were "not expressed in vocational terms" and were thus "difficult to interpret" (*id.*). Still, the ALJ noted the limitations were consistent with the consultative examination results that showed "some difficulty" with recall, and they were also "generally consistent" with Plaintiff's treatment records, which the ALJ indicated were "summarized above" (*id.*). Similar to the ALJ's review of Dr. Raps' opinion, the ALJ found that Dr. Nichols' opinion was not entirely consistent with Plaintiff's treatment records. In support of this finding, the ALJ referenced the relevant treatment records, citing directly to the notes of Plaintiff's treating physicians (*see* AR 16–22).

As noted above, in reviewing the ALJ's decision, the court is not limited to just the discussion of Dr. Nichols' opinion and considers the ruling "as a whole," to discern whether the appropriate factors were considered and appropriately weighed. *Endriss*, 506 F. App'x at 776. With regard to Dr. Nichols, the ALJ compared his opinion with evidence from other medical sources and determined that they were somewhat inconsistent (AR 24). The ALJ also noted that various examinations and other statements from the record provided "some support" for Plaintiff's limitations regarding understanding, remembering, and applying information (*id.*). But the limitations discussed by Dr. Nichols were also "difficult to interpret" (*id.*). The court finds that it was able to trace the ALJ's reasoning with regard to Dr. Nichols' opinion, addressing both supportability and consistency. Given the ALJ's determination that Dr. Nichols' opinion was only "somewhat persuasive," the court also finds that the ALJ adequately explained the reasons it chose not to adopt Dr. Nichols' opinion in Plaintiff's RFC limitations.

The ALJ applied the appropriate standards and sufficiently explained its reasoning concerning Dr. Nichols' opinion, and the court also finds that substantial evidence supports the ALJ's evaluation of Dr. Nichols' opinion.

### iii.  PA Jensen

Finally, concerning PA Jensen's opinion, Plaintiff acknowledges that in his analysis, "the ALJ addressed supportability by noting the lack of explanation in the opinion itself and PA Jensen's treatment notes" (ECF 11 at 20). However, Plaintiff argues that "the ALJ's discussion of consistency was flawed" (*id.*). Specifically, Plaintiff states that "[t]he only specific consistency consideration that the ALJ mentioned was the ALJ's assertion that 'treatment notes' showed that symptoms 'are generally controlled with medication,'" but, according to Plaintiff, "this is inaccurate" (*id.*).

To begin with, the court disagrees with Plaintiff that the ALJ only discussed consistency in its analysis of PA Jensen's opinion by comparing his opinion to other treatment notes. The ALJ also noted there was an "internal inconsistency" in PA Jensen's assessment of Plaintiff's mental capacity (AR 23). An ALJ can discount medical evidence that is inconsistent with other evidence, but they are also entitled to discount evidence that is internally inconsistent. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (quoting *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))). Plaintiff did not challenge this finding on appeal, and the court agrees with the ALJ on this point that PA Jensen's opinion is internally inconsistent.

Plaintiff's challenge on appeal focuses on other treatment records that she believes demonstrate that the ALJ erred in determining that Plaintiff's symptoms were "generally controlled with medication" because if the ALJ erred in this respect, then PA Jensen's opinion would be consistent with other medical evidence (ECF 11 at 20). In its review of the ALJ's decision, however, the role of this court is not to reweigh the evidence. *Hendron*, 767 F.3d at 954. "Thus, even when some evidence could support contrary findings, the Court 'may not displace the agency's choice between two fairly conflicting views,' even if the Court may have 'made a different choice had the matter been before it *de novo*.'" *Romero v. Colvin*, 174 F. Supp. 3d 1283, 1288 (D. Colo. 2016) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007)). In this matter, the ALJ described various treatment notes over the years where it was noted that Plaintiff was doing well on medications that she was taking that treated her mental impairments (AR 20; *see* AR 415, 418, 420, 486, 531–33, 876–77). The ALJ's findings on this point were supported by substantial evidence, and Plaintiff has not demonstrated that this evidence is "overwhelmed by other evidence in the record." *See Natalie L. v. Kijakazi*, 631 F. Supp. 3d 1114,

1117 (D. Utah 2022) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). Accordingly, Plaintiff has not demonstrated that the ALJ erred in finding that PA Jensen's opinions in the Mental Capacity Assessment were not consistent with treatment records and thus not persuasive.

Plaintiff resists this conclusion, arguing that PA Jensen's opinions should have been considered persuasive because they align with the opinions expressed by Dr. Nichols (ECF 11 at 20–21). As noted above, the ALJ only found Dr. Nichols' opinions "somewhat persuasive" (AR 24), and the court found no reversible error concerning the ALJ's analysis of Dr. Nichols' opinions. Plaintiff has provided no case law or argument that demonstrates that the ALJ must find an expert opinion persuasive simply because it is consistent with a second expert's opinion. Particularly where the ALJ found the second expert's opinion unpersuasive.

Consistent with the governing regulations, the ALJ weighed PA Jensen's opinion and provided reasons for that weight and appropriately explained why PA Jensen's opinion was not adopted. The court also finds that substantial evidence supports the ALJ's evaluation of PA Jensen's opinion.

## IV.    CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is legally sound, it is AFFIRMED.  Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the United States Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 8 August 2025.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah